First Neurological Surgery Practice et al. v. United States Department of Health. All right, Mr. Breitenbach. Yes, good morning, Your Honor. You have 30 minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honors. Your Honors, my name is Roy Breitenbach, and I am with Paris Beach, Mirtha Kalina. We represent the Plaintiff Appellants in this matter. Congress enacted the No Surprises Act back in 2020 to address a specific problem, the problem of patients experiencing surprise bills from out-of-network health care providers who rented them care in either the emergency room or other parts of the hospital. And the way Congress chose to address that was to ban out-of-network providers from essentially directly dealing with the patients and balance billing them. In exchange for that, Congress made a tradeoff. And the tradeoff that they made was since out-of-network physicians could no longer balance bill patients and had to essentially accept in the first instance what the health plans reimbursed them, it enacted an independent dispute resolution process. And this was not a situation, Your Honors, where Congress gave a lot of discretion to the agencies in order to set up whatever process they wanted. Congress was very specific, set forth specific deadlines in the statute that had to be followed. But the things you're challenging, you can correct me if I'm wrong, you're challenging their failure to enforce the deadlines that third parties have to meet, right? Isn't that one of your challenges? Well, Your Honor, I wouldn't characterize it as failure to enforce deadlines. I would characterize it as a failure to have any mechanism in place to abide by those deadlines. Let me sort of put where I come under this. I think most of your challenges are really not properly directed to the government. They're directed to insurance companies, to people who are not that. One of your challenges is, and I think at least that's the one I'd like to focus on, and that is whether there are sufficient IDRs. I mean, everything else is kind of, is it the insurance company that is doing this? Even the deadlines, that's the standing thing that's been questioned of that. I do think there is standing, likely, on are there sufficient number of IDRs, and there the question is, is the government right that their good faith and other things is sufficient under the statute? Or is the statute so specific that they have to live with it? So the others may have other thoughts, but that's my basic question problem. Well, Your Honor, we believe that Congress specifically went out of its way to say that there had to be a sufficient number of IDR entities because they were aware that the linchpin of this entire statutory scheme was to have the IDR entities in place to process the claims. And as the statistics show, as undisputed by the government, there are not a sufficient number. But they didn't require any discrete action. Just saying they shall insure doesn't tell us what the discrete action is. For example, they didn't say you have to have a certain number of IDRs or a certain ratio or a certain number by this date, or you have to make a determination of how many you need. There's no specific act that they directed the agency to conduct. So how would we even review that? How would we even review that? Well, I think, Your Honor, the question is whether they have taken any steps towards any of these issues. Well, that's a question of whether they've acted in good faith. And they have done some things, you know. They got, first there was something that said none, then they did it. So the question is, is that enough under this quite, you know, general statute, which doesn't tell us how many at what point. Well, Your Honor, I mean, I think that it's clear that even they would admit that there are not enough. And, you know, the statute has been in effect now for a number of years, and they haven't cited anything that they have done in order to increase the number of IDR entities. What would you want us to order? Excuse me, Your Honor? What would you want us to order them to do? To do a certain number? To do what? You know, if a statute had said you must have a certain proportion, then we could say order that proportion. Under that statute, assuming that we agree with you that more is needed, what is it you'd like us to order? What I would say, Your Honor, is that what we would like you to order is that the government develop a plan to increase the number of IDR entities over time to eliminate the problem. I mean, we're not saying that the court should step in and micromanage the process. But, see, Your Honors, and I think this goes to also our other issues with this. I just want to go back to what you said. We're going to say we order the government to come up with a plan. That would be the relief you're seeking? Yes. Come up with some plan. We don't know what the plan is. Well, come up with some plan that is reasonably designed to increase the number of IDRs, that's reasonably designed to have people to comply. But then we'd be micromanaging it. If it has to be reasonably designed, we'd have to look at what their plan is and make decisions, which the Supreme Court has said courts should not do. They cited a case. I'm curious how you think it's distinguishable. It seemed to be pretty close. This case, Besman v. Whitman, where in 2008 there was an EPA case where the regulation at issue said, when an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident. And we concluded that even though it had language like it is imperative, prompt, that that's not a discreet action that's being required. So how is this any different when they say it shall ensure sufficient number? It seems pretty similar to imperative to have a prompt, accurate information. Well, I think you already have to put into context of everything about the fact that this is dealing with, you know, the question here is an actual number of IDR entities. And, you know, what may or may not be actual notice or prompt notice is a little bit amorphous. But here it's clear that there's not a sufficient number. How many are enough? How many would be enough IDR entities? Well, I would say, Your Honor, they came up with a ratio that they were anticipating. I'm asking you, how many are enough? Does the statute tell us? The statute does not say it, but it says sufficient. Would it go up and down over time? Excuse me, Your Honor? Would the ratio or would the number go up and down over time, depending on how many people are getting out of network claims and things? It may, Your Honor, sure. So the number could be 50 in 2030 and it could be 1,000 in 2040 or something, right? It might be, Your Honor, but they haven't asked it. So I guess that's what I'm asking you. How is that different from what Judge Bianco was pointing out, that you have words like prompt and imperative that seem to be pretty directed but could completely vary over time? How does a court get a handle on that? I think what a court has to say is to say to the agency, you have to come up with a plan to meet the needs. But if we come up and say you have to do a plan and they come up with some plan or other, how do we enforce it? What is it then that a district court can do if they say, well, here's a plan and we're in good faith, which they're already saying, and you know there's still people who are not getting paid and that's terrible because the statute wants people to be paid. You come back to court and you keep coming back to court. What is it that a district court can do? I think, Your Honor, what a district court can do is to review the plan and determine whether or not the plan is sufficient with the statute. But doesn't that put the district court in the position really of running the thing? See, Your Honor, I think the bottom line here for us is that this is not a question where in any of these subjects the agency did something. They've done basically admittedly, I mean I know they say good faith with respect to this, but basically they don't cite anything that they did to attempt to increase or insure a sufficient number of IDR entities, and they certainly don't cite anything that they did to insure that the statutory deadline would apply. Let me go back to the first issue for just one minute. To the extent that a plan misses a deadline, doesn't make payment, you can sue them. They point out that you in fact have filed a suit against them. Yes, Your Honor, and of course the issue is and then the plans say that there was no right to enforce that. There's no private right of action under the No Surprises Act. So while we have sued- So you've lost- We've lost those suits, yes, Your Honor, and now we're relegated to go to state court and attempt to make a conversion claim that it's our money after 30 days and they've attempted to remove them. We do have decisions from Judge Brown in the Eastern District that remanded those cases back to state court. But the point is that with all of this is that certainly the IDR entities are under the control of the government to a large extent. They are the government's contractors. The HHS can certainly direct the IDR entities to take certain actions to insure that deadlines are complied with. All right. Thank you. Thank you, Your Honor. Three minutes for rebuttal. And from the government. Is it Mr. Soter? Yes. Okay, Mr. Soter, whenever you're ready, you can proceed. Good morning, Your Honor. May it please the court. Kevin Soter from the Department of Justice for the government. When it enacted the No Surprises Act in 2020, Congress tasked the government agencies with implementing various aspects of that scheme. The plaintiff in this case asks for essentially wholesale review and enforcement by a federal district court of various aspects of that program without pointing to the sorts of discreet agency action or inaction that are necessary under the Supreme Court's decision in Southern Utah Wilderness Alliance and this court's decision in Ben's case. Yeah, but what has the government done to make to comply with this law? I mean, you know, the law says do something, and while what it says may be vague, it's a little troublesome that you got these insurance companies, these people who are fighting over something. A setup was established by law, and you haven't really done much of anything, have you? So I disagree with that, and I'm happy to walk through some of the factual things about what the government has done. I do think it's important to keep in mind the legal standard that's set by the Supreme Court's decision in Southern Utah. We're well aware of that. And I just think echoing some of the questions that Your Honor was asking, I think it's particularly helpful to look at that decision at pages 66 to 67. There, the plaintiff asked, said a federal court, quote, could simply enter a general order compelling compliance with a mandate in the statute without suggesting any particular manner of compliance. And the Supreme Court emphatically said no. I guess what I think are the more narrow arguments, which is on the enforcement issue, their argument is that they fall within the exception of Cheney and other cases because there's been a complete abdication of any enforcement, that there's no indication that the government is trying to enforce these deadlines at all. So I don't think that's correct as a factual matter. As far as what's happening, I mean, stepping back, what happened is that this system was flooded with far more disputes, almost all of which brought by providers, than anyone anticipated. That created a backlog that made it, as a practical matter, impossible for the number of entities who were certified pursuant to the process for certification that the departments set out as required under the statute. That backlog has been lessening over time. No, but how about for like payments? If someone doesn't pay within the required time. So if the plan doesn't pay within the. . . Do they have to go to state court and agree a conversion claim? No, they can go to federal court and have a private right of action. That's an issue that is the subject of other litigation, but they do have a private right of action. I'm aware of some cases saying that they do. There's one case arising out of Texas that said that they didn't, in which the government participated as amicus to explain why that's incorrect. But in any event, that just underscores that the prompt payment complaint is a complaint about the health plan not complying with a statutory requirement. The steps that the departments could take about that relate to the department's ability to enforce. So, for example, when a provider contacts the departments, there is an email address and a helpline that they can use to say, we have a problem of we have this determination that says health plan must pay us X dollars. Statute says it has to be done within 30 days. They haven't done it. They come to the departments with a complaint. The departments investigate those complaints. And so far, all of those have been resolved without needing to resort to proceedings to seek civil monetary penalties, which is what's available to the departments. But that is exactly the type of enforcement action that they are saying the departments should take, that the Supreme Court has time and again said, you can't just go and ask the government to enforce a statute against someone else. That's the United States versus Texas. Do you want to address the ensuring enough IDR entities issue? Sure. So I think that is squarely controlled by Southern Utah Wilderness Alliance and Benzmann. As far as what the departments have done, the statute says, if you look at page three of the addendum in our brief, this is I think it's 300 GG 111 C4. You'll see that C4A directs the departments to establish a process to certify entities under this paragraph. It then goes on to say certain things that the process has to do. Process has to, among other things, ensure that the people who are being certified have the sufficient medical and legal training to carry out the disputes that are brought to them. And then it says this language that plaintiff focuses on the process, as described here, shall ensure that a sufficient number of entities are certified under this paragraph. That is, I think, quite similar to the type of what the Supreme Court referred to as a mandate in Southern Utah that was within the agency's discretion to figure out how to implement. If there's some evidence in the record that the agency, pursuant to that directive, determined that the ratio of 440 to 1 was the necessary ratio to comply with that directive, and they're not doing that, then why couldn't that potentially be reviewed? Because at least the court's not making up a measurement. We're not determining how many enough. The agency has said, this is what we need, and yet they're not complying with that. So two responses. That's not actually what the agency has said. The statement that the plaintiff relies upon is a statement in a brief that we filed in district court that explained what the agency projected would happen before this process ever was actually implemented, was that there would be 22,000 disputes a year and 50 entities to handle them. As I mentioned, the system has been flooded with far more than that number of disputes, but that projection about what the agency is expected to happen was certainly not saying this is a fixed number that we deem to be sufficient for all purposes. And again, that is- I understand you're telling us that they expected a certain number and came up with a number, and then that turned out to be wrong. At this point, they haven't come up with another number, which puts us in a very difficult situation. But suppose we asked the government to come up with a number and then give it a reasonable amount of time to achieve that number. Would that be something that would be beyond our job? Yes, I think that is exactly what the plaintiff asked for in Southern Utah Wilderness Alliance and what the Supreme Court wrote there, in addition to saying that that's not what 706.1 of the APA means. They wrote, if courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered as well to determine whether compliance was achieved, which would mean that it would ultimately become the task of the supervising court rather than the agency to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management. And that is exactly the type of supervision that would need to be contemplated were the court to order, you know what, agency, you can figure out the sufficient number. You can figure out the discrete actions that are necessary to achieve that sufficient number because the number alone is not something that the agency can go out and say, we're going to compel this many people to apply for this process. The agency has set up an application process. There are features of how this broad scheme works in general that make it more or less likely that people will come forward with a sufficient number of applications and that make it so that the backlog will be cleared and that make it so that ideally over time, fewer disputes will be submitted since that was Congress's design was to have negotiation in the shadow of these occur so that it wasn't necessary to go through this formal process. And all of these sort of discrete steps that the agency can take are well within its discretion to implement this sort of directive from Congress, which is very similar to the type of what the Supreme Court and this court have referred to, I believe, as mandates from Congress that are just within the discretion of the agency to implement. If the court has no further questions, we ask the court to affirm. I think an answer to your question, Your Honor, it's certainly well within this court's power to direct them to come up with a determination as to what, in their view, sufficient means. What do you base that on? I looked myself, but maybe my research skills aren't what they should be. Any case anywhere where Congress has used language, and not the exact language, but the type of language they would use if they want an agency to implement something quickly, promptly, expeditiously, whatever it might be, where that type of language was put into a statute with respect to the implementation of a procedure or a plan where someone was able to bring an APA claim saying, you know what, they're not doing it as fast as Congress wanted. And so the court should set some deadline for them doing that. Well, I don't think, Your Honor, here we're asking to set a deadline. What we're asking them is to interpret what sufficient means. Yeah, but hasn't the Supreme Court essentially said something that we could technically do is not something we're supposed to do? Well, Your Honor, I understand what you're saying, but certainly, you know, since Lope or Bright, the issues have gotten where you're supposed to look more closely at what the congressional intent is. And I think here the congressional intent was that this IDR process was designed to provide relief to providers. Well, that may well be the congressional intent, but the Supreme Court has told us that when the intent is stated this way, courts shouldn't step in. Who are we to do it? Now, you know, the Supreme Court is always wrong, but we do follow it. Well, again, I think in this case, Your Honor, the concerns of the Supreme Court and the concerns of this court has always been to micromanage agency actions. I don't think that requiring them to at least express a sufficient number would intrude on that. Didn't Congress put in a reporting requirement? I think they're supposed to report back in 25 to 26.  So that would be an opportunity, if it's as bad as you're outlining, that Congress is going to get a report saying that they're way behind and then they could put something more specific in, right? Theoretically, sure. But that, you know, but again, that's cold comfort for, you know, the people and the issues that are, you know, the providers issue here, Your Honor, is that, you know, they can't balance bill and the process doesn't work. So they're left with basically no reimbursement. And if they do get reimbursement in certain circumstances, they're left to try to chase a provider. And what they're seeking here is basically that the agencies take some effort towards complying with the statutory mandates. All right. Thank you, Mr. White. Thank you, Mr. Sotomayor. Thank you, Mr. Sotomayor. We'll reserve the decision and have a good day.